

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| TYSHEKA MAKAYLA CHESTNUT and<br>MOHANNAD ABDELWADOOD MESLEH,<br>    Plaintiffs,<br><br>vs.<br><br>UR M. JADDOU, *Director, U.S. Citizenship<br>and Immigration Services*,<br>    Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 3:21-0497-MGL |

**MEMORANDUM OPINION AND ORDER
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT,
DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT,
AND AFFIRMING THE AGENGY DECISIONS**

**I.     INTRODUCTION**

Plaintiffs Tysheka Makayla Chestnut (Chestnut) and Mohannad Abdelwadood Mesleh (Mesleh) (collectively, Plaintiffs) bring this action against Defendant Ur M. Jaddou, Director of the United States Citizenship and Immigration Services (USCIS) under the Administrative Procedure Act (APA), 5 U.S.C. § 500, *et seq*.  The suit, however, is actually against the agency, USCIS.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a [federal] official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.").  This Court has jurisdiction under 28 U.S.C. § 1331.

Pending before the Court are the parties' cross motions for summary judgment.  Having carefully considered both motions, the responses, the replies, the record, and the applicable law, it

is the judgment of the Court USCIS's motion for summary judgment will be granted, Plaintiffs' motion for summary judgment will be denied, and the Court will affirm USCIS' decisions.

## II.     FACTUAL AND PROCEDURAL HISTORY

Plaintiffs appeal the USCIS decisions denying Chestnut's Form I-130 petition for alien relative and Mesleh's Form I-485 petition to register permanent residence or adjust status.

Mesleh, a Jordanian citizen, lawfully entered the United States in January 2017. Chestnut is a United States citizen. Mesleh and Chestnut met in May 2017 and married in August 2017. After that, Chestnut filed the Form I-130 petition and Mesleh filed the Form I-485 petition. Mesleh's cousin, Muayad Morrar (Morrar) for whom he worked, filed an affadvit of support to co-sponsor Mesleh's petition with Chestnut.

A USCIS adjudicator conducted an interview with the couple in August 2018, during which he separated the couple. During the interview, Plaintiffs provided both consistent and inconsistent answers to various questions. The interview notes state the adjudicator ran updated fingerprints; ran an Accurint report—a LexisNexis database that compiles records such as court, police, utility, and property records; and requested a "bed check," which is a fraud referral to Fraud Detection and National Security officers. No bed check ever occurred.

USCIS asked for additional evidence from Plaintiffs, including their complete work history and additional evidence of their life together. The couple responded with Mesleh's work history and an explanation that Chestnut is unemployed. They also provided joint utility bills beginning April 2018; joint bank statements beginning November 2018; joint leases beginning February 2018; receipts from hotels for wedding anniversary trips in August 2018 and August 2019; joint

2

car insurance policies beginning August 2018; 2018 and 2019 joint taxes; and more than 1,200 pictures of the couple, Chestnut's minor son, and their activities.

USCIS issued Chestnut a notice of intent to deny her Form I-130 petition (NOID), which noted that Chestnut and Mesleh provided similar testimony during their interview as to where and when they met, when they started to date, and who was present at their wedding. But, it noted they provided inconsistent answers as to when they moved in together, how often they go to their place of worship, and the name of Chestnut's son.

The NOID gives weight to the utility bills and anniversary trips as evidence in Plaintiffs' favor, but discounts the bank statements because they failed to give evidence of account ownership and failed to reflect household expenses paid from the account. It also discounts the joint taxes from 2018 and 2019 because they fail to mention Chestnut's earnings or claim her son as a dependent. Finally, the NOID also notes that Chestnut filed taxes as single for the 2017 tax year, despite the marriage, and used her prior address, rather than her joint address with Mesleh.

Chestnut responded to the NOID with a letter, explaining that Chestnut filed taxes by herself for 2017 because Mesleh, at the time, had no social security number, and that her prior address was used by a tax preparer who Chestnut had forgotten to inform of the change of address. She also provided tax transcripts for 2018 through 2020 and evidence the joint bank account was used for rent and other household expenses.

Finally, USCIS issued a denial of the Form I-130 petition (Form I-130 denial) in March 2021, stating that Plaintiffs failed to overcome "discrepancies and evidentiary shortcomings." Form I-130 Denial at 1. It focused on Chestnut filing as single on her 2017 tax return, but neglected to address Chestnut's explanation for this. It also stated the photographs fail to show the validity

of the marriage because the couple had on the same clothes in several of the photographs, and because the photographs did "not appear to be photos of major holidays or life events." *Id.* at 2.

Because USCIS denied Chestnut's Form I-130, it also denied Mesleh's Form I-485 petition (Form I-485 denial).

Plaintiffs brought this APA action, claiming USCIS's denials of their petitions were arbitrary and capricious. They subsequently moved for summary judgment. USCIS filed a cross-motion, which also served as its response to Plaintiffs' motion. Plaintiffs filed a response to USCIS's motion, which also served as a reply in support of their motion. Finally, USCIS filed a reply in support of its cross-motion. The Court, having been fully briefed on the relevant issues, is prepared to adjudicate the motions.

### III.    STANDARD OF REVIEW

Under the APA, the Court must uphold an agency decision unless, as applicable here, it is arbitrary and capricious. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 414 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977). Judicial review of agency action is highly deferential and begins with a presumption of validity. *Natural Res. Def. Council v. Env't Prot. Agency*, 16 F.3d 1395, 1400 (4th Cir.1993). The Court must also limit its review of an agency's action to the facts contained in the administrative record. *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins., Co.*, 463 U.S. 29, 43 (1983).

"In determining whether agency action was arbitrary and capricious, the [C]ourt must consider whether the agency considered the relevant factors and whether a clear error of judgment was made." *Ohio Valley Env't Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 192 (4th Cir. 2009) (citing *Volpe*, 401 U.S. at 416). The scope of review under the APA is narrow, however, "the

4

[C]ourt must nonetheless engage in a 'searching and careful' inquiry of the record." *Id.* (citing *Volpe*, 401 U.S. at 416).

In other words, a final agency determination is arbitrary and capricious if:

the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*State Farm*, 463 U.S. at 43. The Court will thus "uphold a decision of less than ideal clarity if the agency's path may be reasonably discerned." *Bowman Transp., Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 286 (1974).

**IV.     DISCUSSION AND ANALYSIS**

   *A.     Whether the administrative record is complete*

Plaintiffs insist the record is missing several key documents, including the Accurint report, fingerprint results, and the fraud referral. USCIS maintains the information was properly excluded because the agency's decision is clearly delineated in the record.

In the context of judicial review of agency action under the APA, "the focal point for judicial review should be the administrative record already in existence." *Camp v. Pitts*, 411 U.S. 138, 142 (1973). Agencies are entitled to a presumption of regularity; thus, "in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." *United States v. Chem. Found.*, 272 U.S. 1, 14–15 (1926); *see also Bar MK Ranches v. Yuetter*, 994 F.2d 735, 740 (10th Cir. 1993) (reasoning presumption of regularity applies to designation of the administrative record).

5

An agency is precluded from excluding information from the record merely because it failed to rely on that information in its final decision. *See Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989) ("The whole administrative record . . . consists of all documents and materials directly or *indirectly* considered by agency decision-makers and includes evidence contrary to the agency's position." (internal quotation marks omitted)). If the Court "simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985).

Federal courts may supplement an agency's administrative record only if it "does not reveal the agency's reasoning or if it appears that the agency acted in bad faith." *Save Our Sound OBX, Inc. v. N.C. Dep't of Transp.*, 914 F.3d 213, 226–27 (4th Cir. 2019). In other words, the record is incomplete only when it is "so bare that it prevents effective judicial review[,]" *Menkes v. U.S. Dep't of Homeland Sec.*, 637 F.3d 319, 339 (D.C. Cir. 2011), because it fails to "delineate[] the path by which [the agency] reached its decision." *Occidental Petroleum Corp. v. Sec. and Exch. Comm'n*, 873 F.2d 325, 338 (D.C. Cir. 1989).

USCIS's decision sets out the reasons for its Form I-130 denial, albeit in a relatively conclusory manner. Although the Accurint report and fingerprint results—which were preliminary and peripheral—may have provided additional context for USCIS's determination, they are unnecessary to understand it. And, a bed check never occurred, so it failed to influence USCIS's decision. It appears USCIS declined to consider the information, either directly or indirectly, when making its decision.

The record includes all the evidence Plaintiffs provided in support of their petitions. The Court can therefore review the agency's decision, which determined, as explained below, that

6

Plaintiffs had failed to establish a bona fide marriage by a preponderance of the evidence. *See Matter of Rehman*, 27 I&N Dec. 124, 125 (B.I.A. 2017) (setting forth preponderance of the evidence standard of review). Applying the presumption of regularity, the Court determines the record is complete.

The Court therefore will decline to grant Plaintiffs' motion for summary judgment on this ground and will refrains from remanding this case to USCIS to supplement the record. It thus need not address USCIS's other defense insisting the administrative record is complete: that the deliberative process privilege applies to the evidence. *See Karsten v. Kaiser Found. Health Plan of Mid–Atl. States, Inc.*, 36 F.3d 8, 11 (4th Cir. 1994) ("If the first reason given is independently sufficient, then all those that follow are surplusage; thus, the strength of the first makes all the rest *dicta*.").

### B.     *Whether USCIS's Form I-130 denial was arbitrary and capricious*

Plaintiffs argue USCIS's Form I-130 denial was arbitrary and capricious because USCIS applied a more taxing standard than preponderance of the evidence and they offered explanations for every alleged inconsistency noted in the Form I-130 denial and the NOID. USCIS responds that USCIS had a rational basis for its Form I-130 denial, so Plaintiffs have failed to meet the burden under the highly deferential APA standard. Before turning to analysis of the parties' arguments, the Court will provide a brief primer on the applicable immigration law.

A noncitizen seeking to immigrate to the United States must have an immigrant visa. *See generally* 8 U.S.C. §§ 1151–54 (setting forth immigration requirements and procedures). One method to obtain an immigrant visa is through a United States citizen spouse. 8 U.S.C. § 1151(b)(2)(A)(i). The citizen-spouse must file a Form I-130 and provide sufficient documentation to establish, among other things, "the claimed relationship of the petitioner to the

7

beneficiary." 8 C.F.R. § 204.1(f). The petitioner must establish a qualifying relationship, including that the marriage is bona fide, by a preponderance of the evidence. *Matter of Rehman*, 27 I&N Dec. at 125.

In other words, the couple is prohibited from entering the marriage "for the purpose of evading the immigration laws." 8 C.F.R. § 204.2(a). The "critical inquiry in determining whether the good faith standard has been met is whether the parties intended to establish a life together at the inception of the marriage." *Upatcha v. Sessions*, 849 F.3d 181, 183 (4th Cir. 2017) (internal quotation marks omitted).

### 1.     *Whether USCIS applied the proper burden of proof*

The Form I-130 denial stated that USCIS applied a preponderance of the evidence standard. It also noted it denied the petition in part because Chestnut's response to the NOID "fail[ed] to provide additional evidence to show [she] and [Mesleh] are in a valid marriage." Form I-130 denial at 2. Plaintiffs posit these statements are contradictory.

Rather than requiring additional evidence, the Form I-130 denial merely stated that, in the absence of such evidence, USCIS was unable to conclude Plaintiffs' marriage was more likely than not valid. In other words, USCIS was merely detailing its application of the preponderance of the evidence standard. USCIS neglects to detail why it discounted Plaintiffs' explanations regarding the discrepancies and evidentiary shortcomings it identified. Nevertheless, it does recognize and consider them. *See* Form I-130 Denial at 2 ("In your letter you attempt to explain away the discrepancies in answers that were provided by you and the beneficiary during your interview").

And, USCIS fails to treat Plaintiffs' inconsistent testimony as an "additional presumption against them[,]" as Plaintiffs insist. Plaintiffs' Motion at 10. Instead, it is evidence that tends to

undermine their claim, thus causing a failure to meet their burden of proof. *See Matter of E-M-*, 20 I&N Dec. 77, 79 –80 (BIA 1989) ("There are no magic words or mathematical formulas that can describe a preponderance of the evidence so it can be applied mechanically in every case.").

Accordingly, the Court determines USCIS applied the proper burden of proof by looking at the totality of the circumstances.

### 2. Whether the Form I-130 Denial runs counter to the evidence

Under the APA, the Court must refrain from "reweigh[ing] the and determ[ing] which of the competing views is more compelling." *Gonahasa v. U.S. Immigr. and Nationalization Serv.*, 181 F.3d 538, 542 (4th Cir. 1999). But, the Court considers whether the Form I-130 denial "runs counter to the evidence before the agency." *See State Farm*, 463 U.S. at 43 (setting forth the circumstances under which the Court may find an agency decision arbitrary and capricious).

This Court may review the agency decision "solely by the grounds invoked by the agency." *Sec. and Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194, 196 (1947). "If those grounds are inadequate or improper, the [C]ourt is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis." *Id.* The Court therefore must ignore any post hoc rationalizations. *See State Farm*, 463 U.S. at 50 (explaining the Court "may not accept appellate counsel's *post hoc* rationalizations for agency action."). It thus considers only the rationale explained in the decision and the NOID.

First, USCIS's discounting of the photographs provided by Plaintiffs strains credulity. Although it is true that Plaintiffs were wearing the same clothes in multiple photographs, it fails to appear as though Plaintiffs were attempting to pass those photographs as from separate occasions. Instead, they are multiple photographs from the same day or event. And, in the 1,200 photographs provided, Plaintiffs engage in many activities over what appear to be many different days,

9

including what appear to be holidays.  Notably, Chestnut appears to sport several different hairstyles throughout the photographs.  True, as USCIS noted, Plaintiffs failed to label the photographs with the events taking place or the dates take.  But, USCIS's determination that most of the photographs were taken on the same day is unsupported by the evidence.

Likewise, USCIS provides no rational basis for discounting Plaintiffs' tax returns.  USCIS fails to address Chestnut's explanation for her 2017 tax status—that Mesleh had yet to receive his social security number at that time—which is supported by the record.  And, although Chestnut filed her 2017 tax return as single, Plaintiffs filed jointly the next two years.

Nevertheless, Plaintiffs did provide certain inconsistent answers at their interview, which were listed in the NOID.  For example, Chestnut stated she met Mesleh at the convenience store where he worked, but Mesleh indicated he met her at his previous place of employment, a beauty supply store.  Plaintiffs' response to the NOID fails to address this discrepancy.

And, Chestnut testified she thought Mesleh's cousin and co-sponsor were two different people, but, in fact, Morrar was both Mesleh's cousin and co-sponsor.  Although Chestnut attempted to explain this inconsistency and lack of knowledge in her response to the NOID, the Court holds USCIS's discounting of those explanations rational.  Chestnut's explanations are self-serving and vague, even if possibly true.

In the NOID, USCIS mentions that Plaintiffs provided utility statements beginning in May 2018 and joint bank statements beginning in November 2018.  USCIS maintains this undermines Plaintiffs' claim, because there are no joint statements from August 2017, when Plaintiffs married, until mid-2018.  Although the NOID fails to explicitly state this rationale, the Court considers this as additional evidence that undermines Plaintiffs' claim.  *See Alaska Dep't of Env't Conservation v. Env't Prot. Agency,* 540 U.S. 461, 497 (2004) ("Even when an agency explains its decision with

less than ideal clarity, a reviewing court will not upset the decision on that account if the agency's path may reasonably be discerned.").

Similarly, the NOID notes that the leasing documents provided failed to cover the entirety of the period Plaintiffs claimed to have been living together.  Chestnut's explanation that she split her time between two locations because of her work schedule fails to explain this lease discrepancy.  And, the leasing documents that were provided neglect to list Chestnut's son as an occupant of the apartment, despite admonitions in the lease that "[o]nly persons designated in the rental agreement . . . shall reside in the rented premises."  February 2018 Lease at 2.  This contradicts Plaintiffs' statements that he lives there.  Moreover, if Chestnut's son resided elsewhere, this indicates the shared lease may be pretext, because Chestnut is his primary caregiver.

In sum, USCIS's decision, although deficient in certain respects, fails to constitute a "clear error of judgment."  *See Holly Hill Farm Corp. v. United States*, 447 F.3d 258, 263 (4th Cir. 2006) (internal citation omitted) (reiterating that "[t]he ultimate standard of review is a narrow one").  USCIS "engaged in reasoned decisionmaking."  *Judalang v. Holder*, 565 U.S. 42, 53 (2011).

Accordingly, under the deferential standard, the Court must uphold the Form I-130 denial.  And, because USCIS based the Form I-485 denial upon the Form I-130 denial, the Court affirms that decision as well.  The Court will thus grant USCIS's motion for summary judgment and deny Plaintiffs' motion for summary judgment.

11

## V. CONCLUSION

For the reasons stated above, it is the judgment of the Court USCIS's motion for summary judgment is **GRANTED**; Plaintiffs' motion for summary judgment is **DENIED**; and USCIS's decisions are **AFFIRMED**.

**IT IS SO ORDERED.**

Signed this 7th day of September 2022, in Columbia, South Carolina.

                                          s/ Mary Geiger Lewis
                                          MARY GEIGER LEWIS
                                          UNITED STATES DISTRICT JUDGE